
ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
RECEIVED

| | |
|---|---|
| Reginald Witcher, as Administrator Ad Litem for the Estate of Eloise Witcher,<br>Plaintiff,<br><br>v.<br>MEDTRONIC ~~CORPORATION~~, INC.<br>Defendants. | Court File No. 2:07CV989-mef<br><br>DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

## ESTATE OF ELOISE WITCHER (DECEASED)

### NATURE OF THE CASE

1. Plaintiff Decedent Eloise Witcher ("Plaintiff") died as a result of her Medtronic implantable cardioverter defibrillator's ("ICD") mechanical failure. Medtronic knew or should have known of the defects within Mrs. Witcher's device and the risks associated with her device.

2. Reginald Witcher is the Administrator Ad Litem of the Estate of Eloise Witcher and brings this claim for wrongful death for all damages and claims authorized therein.

3. Medtronic, Inc. manufactures ICDs. The defibrillators are devices that are implanted into the chest cavity of patients and are intended to monitor irregularities in heart rhythm (arrhythmia). When functioning properly, ICDs are able to detect when the heart is beating out of rhythm and deliver a series of electrical shocks to correct the arrhythmia.

4. Plaintiff was implanted with a InSync II Marquis Model 7289 defibrillator manufactured by Defendant, Serial Number PRJ606025S. On November 15, 2005, Plaintiff died of complications stemming from the device's failure.

5. This lawsuit asserts claims against Medtronic, Inc. for negligence; product liability for manufacturing and/or design defect; product liability for failure to warn; breach of express and implied warranties for the design, manufacture, production, testing, study,

inspection, labeling, marketing, advertising, sales, promotion, and distribution of the device model that caused Plaintiff's device to malfunction resulting in Plaintiff's death.

## PARTIES

6. At all relevant times, Plaintiff's decedent was a resident and citizen of the state of Alabama.

7. Defendant Medtronic, Inc. (Medtronic) is a corporation existing under the laws of Minnesota with its principal place of business in that state.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The matter in controversy in this civil action well exceeds $75,000, exclusive of costs and interest, as to the defendant, and is between citizens of different states.

9. Venue is proper in this district under 28 U.S.C. § 1391 because Plaintiff resided in the state of Alabama at the time of her death and defendant conducted business in the state of Alabama.

## FACTUAL ALLEGATIONS

10. Plaintiff was implanted with a InSync II Marquis Model 7289 defibrillator that was developed, tested, marketed, warranted and sold by Defendant. This ICD is one of the Marquis family of devices about which Defendant issued advisories in February, 2005.

11. This case involves, *inter alia*, Defendant's failure to warn doctors and patients of information within its knowledge, possession or both indicating the subject ICDs were affected by a design and manufacturing defect that made them unreasonably dangerous, unfit for their intended use, and that they posed health risks (including in some cases the risks of death or serious injury) to ICD recipients.

12. Defendant designed, manufactured, marketed and sold the subject ICD, touting the device's exceptional design and reliability in monitoring, regulating heart rhythm, and

reviving a person's heart during arrhythmia and/or arrest. Defendant omitted material facts, intentionally withheld information regarding device malfunctions and mechanical design defects, and failed to timely and adequately warn the medical community and the general public, thereby placing tens of thousands of people unnecessarily at risk without their informed consent.

### DEFENDANT'S DEVICE AND ITS INTENDED FUNCTIONS

13. Cardiovascular disease is the leading cause of death in both women and men in the United States, claiming more lives every year than the five leading causes of death combined.

14. A normal heartbeat results from an electrical impulse originating in the sinoatrial (SA) node in the upper right chamber of the heart known as the atrium. The impulse causes the atria to contract, which then causes blood to fill the ventricles. The impulse then travels down to the ventricles causing them to contract, forcing blood out of the heart. This cycle repeats itself continuously, which results in a normal heartbeat.

15. An irregular heartbeat, or arrhythmia, results when the normal electrical system malfunctions. These arrhythmias can prevent the heart from pumping enough blood to the body, which can lead to physical symptoms, tissue death, and cardiac arrest.

16. Certain persons with an arrhythmia require an ICD to monitor and respond to their irregular heartbeat. Similar to a pacemaker, an ICD monitors, regulates, and stabilizes in the event of either an increase or decrease in heart rhythm. When a person's heart stops pumping normally, the ICD automatically determines what type of treatment is needed, if any, and delivers it automatically.

17. During a heart failure episode, a patient's survival depends upon the success of the ICD device detecting the problem and shocking the heart back to a regular rhythm. Without a prompt response, a patient's life faces great peril, and may require external resuscitation from medically trained personnel.

18. If an ICD fails to engage during an arrhythmic episode, a patient in cardiac arrest has only minutes before permanent injuries or death occurs. The medical community often describes this concept as "time is muscle."

**Patient's Medical History with Defendant**

19. Plaintiff was implanted with a InSync II Marquis Model 7289 defibrillator. Plaintiff's decedent was unaware of the design and/or manufacturing defect within Mrs. Witcher's device, which was known or should have been known to exist by Defendant, at the time of her implantation surgery.

20. Plaintiff's decedent, dependent on the ICD for cardiac regulation and stabilization, relied on the mechanical success and function of his device on a daily basis.

21. On November 15, 2005, Mrs. Witcher died. On information and belief, Mrs. Witcher died as a result of her ICD's mechanical failure.

22. Defendant knew or should have known about the design and/or manufacturing defects associated with the ICD implanted in Plaintiff, and had a duty to inform her and all ICD recipients about the risks associated with the design and/or manufacturing defects of the device.

**COUNT ONE**

23. Plaintiff realleges all previous paragraphs.

24. Defendant had a duty to exercise the reasonable care in the manufacture, testing, inspection, packaging, labeling, distribution, marketing, sale, withdrawal and recall of the ICD, to insure the safety of its product and to insure that the consuming public, including the Plaintiff's decedent and her physicians and agents, obtained accurate information and instructions for the safe use or non-use of the ICD.

25. Defendant failed to discharge this duty by distributing a defectively designed and/or manufactured device into the stream of commerce without warning or notice of the

defects. Defendant's failure to discharge its duty exposed Plaintiff to life threatening physical trauma, resulting in death. Defendant's failure to discharge its duty rendered Plaintiff's physicians ignorant of information necessary to treat Plaintiff.

26. As a direct and proximate result of Defendant's conduct, Plaintiff's decedent was caused to die.

## COUNT TWO

27. Plaintiffs incorporate by reference all preceding allegations as is fully set forth herein.

28. Plaintiffs allege, on information and belief, that Plaintiff's sudden, premature and untimely death was the result of the Decedent being implanted with the InSync II Marquis Model 7289 defibrillator.

29. Decedent would not have suffered a premature and untimely death but for the intentionally and negligently tortious conduct of Defendants; similarly, as alleged throughout this Complaint and as incorporated herein, Plaintiffs allege the Defendants are liable for Decedent's death.

30. Plaintiffs seek to recover damages for all legally compensable injuries relating to Plaintiff's wrongful death.

## COUNT THREE

31. Plaintiff realleges all previous paragraphs.

32. Defendant's ICD was defectively designed and manufactured because the foreseeable risks of mechanical malfunction and failure outweighed the benefits associated with the device.

33. Defendant's ICD was expected to and did reach Plaintiff without substantial change or adjustment to its mechanical function upon implanting the device.

34. Defendant, the manufacturer of the ICD, knew or should have known of the design and/or manufacturing defect and the risk of serious bodily injury that exceeded the benefits associated with the design or formulation.

35. Furthermore, Defendant's ICD and its design and/or manufacturing defects presented an unreasonably dangerous risk beyond what the ordinary consumer would reasonably expect.

36. The ICD Defendant manufactured and supplied to Plaintiff was defectively designed and/or manufactured due to inadequate warnings or instruction because Defendant manufacturer knew or should have known through testing or otherwise that the product created a high risk of bodily injury and serious harm. Defendant failed to provide adequate and timely warnings of the risks to consumers, both before sale and post-sale.

37. As a direct and proximate result of Defendant's failure to warn and improper conduct Plaintiff suffered and will continue to suffer economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

38. Defendant's ICD is a product inherently dangerous for its intended use due to design and/or manufacturing defect and improper functioning. Defendant is therefore strictly liable to Plaintiff for damages specified herein.

## COUNT FOUR

39. Plaintiff realleges all previous paragraphs.

40. Defendant developed, manufactured, marketed, and distributed the ICD to the general public even after learning of design defects that threatened the intended use of the device.

41. The ICD models with design and/or manufacturing defects were expected to and did reach Plaintiff without substantial change or adjustment to mechanical function upon

implanting the device.

42. Defendant knew or should have known through testing, adverse event reporting, or otherwise, that the product created a high risk of bodily injury and serious harm.

43. Defendant failed in providing timely and adequate warnings or instruction regarding its devices it knew or should have known contained a design and/or manufacturing defect.

44. As a direct and proximate result of Defendant's conduct, Plaintiff was caused to die.

45. Defendant's ICD is a product inherently dangerous for its intended use due to design and/or manufacturing defect and improper functioning. Defendant is therefore liable to Plaintiff for damages specified herein.

## COUNT FIVE

46. Plaintiff realleges all previous paragraphs.

47. At the time Defendant designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted, and distributed its ICD devices for use by Plaintiff, they knew of the use for which their devices were intended.

48. Defendant impliedly warranted its ICD products to be of merchantable quality and safe and fit for their intended use.

49. Contrary to this implied warranty, Defendant's ICD device was not of merchantable quality, safe or fit for its intended use because the device was and is unreasonably dangerous and unfit for the ordinary purposes for which it was and is used, as alleged herein.

50. As a direct and proximate result of Defendant's conduct, Plaintiff's decedent died.

## COUNT SIX

51. Plaintiff realleges all previous paragraphs.

52. Defendant's concealment and failure to warn through promotional statements and product literature expressly warranted to Plaintiff that the implanted ICD was safe, capable of reducing the risk or severity of heart failure, and was a highly reliable product in comparison to the conventional product line.

53. In response to these promises and express statements, Plaintiff and Plaintiff's physicians and surgeons relied on Defendant's affirmations and warranties.

54. The ICD did not conform to those express representations in light of recently discovered disclosures and information previously withheld by Defendant. Defendant's express warranty through its false statements failed to disclose and provide patient approval of the design and/or manufacturing defects inherent in the devices.

55. Defendant breached its warranty of the mechanical soundness of its ICD by continuing sales and marketing campaigns highlighting the safety of its product while it knew of the design and/or manufacturing defects and risk of product failure.

56. As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff's decedent was caused to die.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in her favor against the Defendant as follows:

57. In an amount in excess of $75,000 as provided by law and to be supported by the evidence at trial;

58. An award of attorneys' fees and costs of suit, as provided by law;

59. Such other legal and equitable relief as this Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

DATED: This the 2nd day of November, 2007.

By: _____
Reginald Witcher
P.O. Box 960854
Riverdale, GA  30296
404-484-3207

```
DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602001053
Cashier ID: brobinso
Transaction Date: 11/05/2007
Payer Name: REGINALD WITCHER
----------------------------------------
CIVIL FILING FEE
 For: REGINALD WITCHER
 Case/Party: D-ALM-2-07-CV-000989-001
 Amount:         $350.00
----------------------------------------
CASH
 Amt Tendered:  $350.00
----------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00
```

WITCHER V. MEDTRONIC, INC.